RECEIVED

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | | |
|---|---|---|
| CHRISTOPHER THORNTON, | ) | |
|     **Plaintiff,** | ) | CIVIL ACTION NO. |
| | ) | |
| **v.** | ) | |
| | ) | 2:17-cv-165 |
| AMF BOWLING CENTERS, INC. | ) | |
|     **Defendant.** | ) | |
| | ) | |

## COMPLAINT

### I.   INTRODUCTION

Plaintiff, Christopher Thornton, files this Title III, ADA action, pursuant to 42 U.S.C. §12181, et. seq. In Count One of the Complaint, Plaintiff seeks to enjoin the Defendant to remove architectural barriers. In Count Two, Plaintiff seeks to enjoin Defendant to maintain practices, policies, and procedures necessary to maintain the premises free of architectural barriers both now and once the barriers are removed. In Count Three, Plaintiff seeks to enjoin the Defendant's use of the premises to provide full and equal enjoyment of the premises to the disabled. Counts Two and Three seek independent relief in addition to the removal of architectural barriers.

## JURISDICTION, PARTIES, AND ARTICLE III STANDING

1. Because this is an action for declaratory and injunctive relief pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. §12181, et. seq., (hereinafter referred to as the "ADA") and its implementing regulations, this Court is vested with original jurisdiction under 28 U.S.C. §1331 and §1343.

2. Venue is proper in this Court, the United States District Court for the Middle District of Alabama, pursuant to Title 28, U.S.C. §1391 and the Local Rules of the United States District Court for the Middle District of Alabama.

3. Plaintiff, Christopher Thornton, suffered a spinal cord injury. As a result of the injuries he sustained, Mr. Thornton requires a wheelchair for mobility. The extent of Mr. Thornton's physical problems limits his ability to care for himself, perform manual tasks, walk, stand, lift, bend, and work, all of which are major life activities pursuant to 42 U.S.C. § 12102 (2) (A). Mr. Thornton is, accordingly, disabled pursuant to the Americans with Disabilities Act, in that he suffers a physical impairment substantially limiting one or more major life activities. 42 U.S.C. 12102; See also, 28 C.F.R. 36.104.

4. Defendant, AMF Bowling Centers, Inc., (hereinafter "Brunswick Zone"), is a Corporation that is both registered to conduct business and is conducting business within the State of Alabama sufficient to create both general and specific in personam jurisdiction. Upon information and belief, AMF Bowling Centers, Inc. "operates" and "leases" the Brunswick Zone establishment located at 1661 Eastern Blvd, Montgomery, AL 36117. 42 U.S.C. § 12182. The Brunswick Zone establishment is a commercial facility in that the unit is intended for nonresidential use and affects commerce. 42 U.S.C. § 12181(2)(A). Moreover, the establishment features 38 all-star bowling lanes, billiards, interactive arcade and on site pro shop where you can get all the latest bowling gear to the public, which qualifies Brunswick Zone as a place of public accommodation pursuant to 42 U.S.C. § 12181(7).

5. All events giving rise to this lawsuit occurred in the Middle District of Alabama and the Defendant is a citizen thereof.

6. Plaintiff Christopher Thornton, is a resident of Montgomery Alabama and lives only five miles from the Brunswick Bowling Lanes, which is the subject of this action. Mr. Thornton enjoys the

social activities and entertainment, whether it is taking part in the thrilling night life downtown or simply going bowling with his friends and family. Nevertheless, Mr. Thornton enjoys going to the Brunswick Zone establishment, which is the subject of this action. Mr. Thornton enjoys bowling and intends to continue going to the Brunswick Zone establishment because he likes its' fun entertaining atmosphere, that provides 38 all-star lanes, billiards, interactive arcade and on site pro shop where he can get all the latest bowling gear. Mr. Thornton will return not only to bowl, but to also confirm compliance with the ADA by Brunswick Zone. Mr. Thornton does not know exactly when he will go back to the Brunswick Zone establishment, because he has not planned out every bowling trip for the rest of his life. Such specific planning is not necessary to invoke the ADA. See, e.g. *Parr v. L & L Drive Inn Restaurant* 96 F. Supp.2d 1065, 1079 (D. Haw 2000) and *Segal v. Rickey's Restaurant and Lounge, Inc.* No. 11-61766-cn, (S.D. Fla 2012) ("*Specification as to date and time of return to this public accommodation is impossible due to the nature of the event. Fast food patrons visit such restaurants at the spur of the moment*".). Mr. Thornton definitely intends to return to Brunswick Zone. Mr.

Thornton has been going to Brunswick for years and went last in late 2016. Brunswick made some changes in relation to a 2013-2014 contact from Thornton's lawyers. The matters in this Complaint are things Brunswick refuses to address.

7. Because of the barriers described below in paragraph 19 and throughout the Complaint, Plaintiff has been denied full and equal enjoyment of the Defendant's premises on the basis of his disabilities.

8. Plaintiff accordingly, has Article III standing to pursue this case because (1) he is disabled, pursuant to the statutory and regulatory definition; (2) the Defendant's establishment is a place of public accommodation, pursuant to the statutory and regulatory definition; (3) he has suffered a concrete and particularized injury by being denied access to the establishment by architectural barriers, by being denied access by the Defendant's practices described throughout this Complaint, and by Defendant's denial of the use of the establishment for his full and equal enjoyment as the able-bodied, as described throughout the Complaint, and (4) because of these injuries there exists a genuine threat of imminent future injury, as described in paragraph 17.

## II.    PLAINTIFF'S CLAIMS

### ADA, Title III

9.  On or about July 26, 1990, Congress enacted Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12181 et.seq. Commercial enterprises were provided one and a half years from enactment of the statute to implement its requirements. The effective date of Title III of the ADA was January 26, 1992. (42 U.S.C. §12181; 20 C.F.R. §36.508 (A); *See also*, § 36.304).

10. Pursuant to 42 U.S.C. § 12181(7) and 28 C.F.R. § 36.104, the Defendant's establishment is a place of public accommodation in that it is an establishment providing 38 all-star lanes, billiards, interactive arcade and on site pro shop where you can get all the latest bowling gear available to the public. Accordingly, it is covered by the ADA and must comply with the Act.

## COUNT ONE
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE III
## 42 U.S.C. § 12182(b)(2)(A)(iv) and (v)
### *(Architectural Barriers)*

## <u>Defendant's Existing Facility Is Subject to the 2010 ADA Design Standards for the Portions of the Facility Addressed in this Complaint</u>

11. Plaintiff is informed and believes based on publicly available information that the building in which the Brunswick Zone establishment located at 1661 Eastern Blvd, Montgomery, AL 36117 was first constructed in 1986 with renovations, alterations and/or improvements in 2013.

12. The ADA was enacted requiring that facilities constructed prior to January 26, 1992, are considered an "existing" "facility, such that those facilities must remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). All "alterations" made to existing facilities after January 26, 1992, and all "new construction" after January 26, 1993, must be *readily accessible to and usable by individuals with disabilities*, including *individuals who use wheelchairs.* 42 U.S.C. § 12183(a) and (b). 28 *C.F.R.* § 36.402. "Readily accessible to and usable by. . ." is the "new construction" standard, which requires compliance with the

Department of Justice standards. 42 U.S.C. § 12183(a)(1); 28 *C.F.R.* § 36.406. The only defense for failing to provide readily accessible and usable buildings constructed under the "new construction" standards is if the design and construction of the building to be readily accessible and usable is "structurally impracticable". 42 U.S.C. § 12183(a)(1). The "structural impracticability" defense applies only in rare circumstances of extraordinary terrain. 28 *C.F.R.* § 36.401(c). "Readily accessible to and usable by. . ." is also the "alterations" standard. 42 U.S.C. § 12183(a)(2). "Alterations" must be made to the maximum extent feasible.  42 U.S.C.  § 12183(a)(2); 28 *C.F.R.* § 36.402. An alteration is a change to a place of public accommodation or commercial facility that affects or could affect the usability of the facility or any part thereof. 28 *C.F.R.* § 36.402(b).

13. New construction and alterations must comply with either the Justice Department's 1991 Standards for Accessible Design, or the 2010 Standards for Accessible Design. 28 *C.F.R.* § 36.406 establishes whether the 1991 Standards for Accessible Design or 2010 Standards for Accessible Design apply: New construction and alterations subject to §§ 36.401 or 36.402 shall comply with the 1991 Standards

if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is before September 15, 2010, or if no permit is required, if the start of physical construction or alterations occurs before September 15, 2010. 28 *C.F.R.* § 36.406(a)(1). New construction and alterations subject to §§ 36.401 or 36.402 shall comply either with the 1991 Standards or with the 2010 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is on or after September 15, 2010, and before March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after September 15, 2010, and before March 15, 2012. 28 *C.F.R.* § 36.406(a)(2). New construction and alterations subject to §§ 36.401 or 36.402 shall comply with the 2010 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is on or after March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after March 15, 2012. *Where the facility does not comply with the 1991 Standards, the 2010 Standards are*

*applicable*. See 28 C.F.R. § 36.406(5)(ii) which states, "Newly constructed or altered facilities or elements covered by §§ 36.401 or 36.402 that were constructed or altered before March 15, 2012 and that do not comply with the 1991 Standards shall, on or after March 15, 2012, be made accessible in accordance with the 2010 Standards."

14. For the architectural barriers at issue in this case, the 2010 Standards for Accessible Design are applicable.

## Plaintiff's Concrete and Particularized Standing to Pursue an Injunction

15. The Defendant has discriminated, and continues to discriminate, against Plaintiff, and others who are similarly situated, by denying full and equal access to, and full and equal enjoyment of goods, services, facilities, privileges, advantages and/or accommodations at Brunswick Zone in derogation of 42 U.S.C. § 12101 et. seq., and as prohibited by 42 U.S.C. § 12182 et-seq. As "new construction", the building must be readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183 (a) and (b).  Defendant's failure to remove the existing barriers thus violates 42 U.S.C. § 12182(b)(2)(A)(iv), which requires removal of architectural barriers.

16. As described above, prior to the filing of this lawsuit, Plaintiff was denied full and safe access to all of the benefits, accommodations and services offered to individuals without disabilities within and about the Defendant's facility. Plaintiff's access was inhibited by each of the described architectural barriers detailed in this Complaint which remain at the facility in violation of the ADA. Because of the foregoing, Plaintiff has suffered an injury-in-fact in precisely the manner and form that the ADA was enacted to guard against.

17. Plaintiff has definite plans to return to the Brunswick Zone in the future, as described in paragraph 6. Plaintiff will return to Brunswick Zone within the next few months not only to bowl, but also to see if Brunswick Zone has repaired the barriers, and changed its practices and procedures. Plaintiff will continue to do so. Even when Brunswick Zone is repaired, Plaintiff will continue to go there to enjoy the atmosphere and bowl. Absent remedial action by Defendant, Plaintiff will continue to encounter the architectural barriers, and the discriminatory policies, practices, and procedures described herein and as a result, be discriminated against by Defendant on the basis of his disabilities. The Eleventh Circuit held

in *Houston v. Marod Supermarkets*, 733 F.3d 1323 (11th Cir. 2013),

when architectural barriers have not been remedied *"there is a 100%*

*likelihood that plaintiff... will suffer the alleged injury again when he returns*

*to the store."* Due to the definiteness of Plaintiff's future plans to

continue visiting the subject facility, there exists a genuine threat of

imminent future injury.

## Architectural Barriers

18. Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991,
    the Department of Justice, Office of the Attorney General,
    promulgated Federal Regulations to implement the requirements of
    the ADA. 28 C.F.R. Part 36.

19. Plaintiff has been throughout the establishment, from the entrance to
    the sales/service counter, to the snack counter, throughout
    circulation paths and accessible routes, to the bar and pool table area,
    to and throughout the game room, the game room sales/service
    counter, to and throughout the bowling lanes and service areas, paths of
    travel, and in particular but not limited to all of which is more
    specifically described below. Defendant's facility located at 1661
    Eastern Blvd, Montgomery, AL 36117, more commonly known as

"Brunswick Zone", violates the ADA in particular but not limited to:

a. The front entrance floor mats are not stable, firm, or otherwise secured to the floor;

b. Brunswick Zone provides a check-out counter for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, which includes but is not limited the following failures of Defendants:

    A. The existing counter fails to provide a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

        i. There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

        ii. There is not clear floor space that is at least 48 inches long x 30 inches wide provided

adjacent to the 36-inch minimum length of counter;

**B.** The existing counter fails to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

 **i.** There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

 **ii.** There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

 **iii.** There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36

inches above the finished floor positioned for a forward approach;

C. There is no ADA accessible portion of the counter that extends the same depth as the non-accessible portion of the counter;

D. There is no ADA accessible check writing surface provided 28 inches minimum and 34 inches maximum above the finished floor that allows for the required knee and toe clearance;

E. Brunswick Zone fails to maintain the accessible features at the check-out counter that are required to be readily accessible to and usable by individuals with disabilities;

c. Brunswick Zone provides a snack counter for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, which includes but is not limited the following failures of Defendants:

A. The existing counter fails to provide a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

     i. There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

     ii. There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

B. The existing counter fails to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

     i. There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

Page **16** of **67**

  **ii.**  There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

  **iii.**  There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

**C.** There is no ADA accessible portion of the counter that extends the same depth as the non-accessible portion of the counter;

**D.** There is no ADA accessible check writing surface provided 28 inches minimum and 34 inches maximum above the finished floor that allows for the required knee and toe clearance;

E. Brunswick Zone fails to maintain the accessible features at the snack counter that are required to be readily accessible to and usable by individuals with disabilities;

d. Brunswick Zone provides a bar area for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited the following failures of Defendants:

i. The top surface of the bar exceeds the maximum allowed height of 34 inches above the finished floor;

ii. The bar counter fails to provide the required knee clearance for an individual with a disability to be afforded the opportunity to sit at the bar;

iii. The bar counter fails to provide the required toe clearance for an individual with a disability to be afforded the opportunity to sit at the bar;

    **iv.** Brunswick Zone fails to maintain the accessible features at the bar;

    **v.** The Brunswick Zone bar area fails to provide at least five percent (5%) ADA accessible seating;

**e.** Brunswick Zone provides high-top seating in the pool table area for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited the following failures of Defendants:

    **i.** The top surface of the high-top seating exceeds the maximum allowed height of 34 inches above the finished floor;

    **ii.** The high-top seating fails to provide the required knee clearance for an individual with a disability to be afforded the opportunity to sit at the high-top seating;

        **iii.** The high-top seating fails to provide the required toe clearance for an individual with a disability to be afforded the opportunity to sit at the high-top seating;

        **iv.** Brunswick Zone fails to maintain the accessible features at the high-top seating;

        **v.** The Brunswick Zone fails to provide at least five percent (5%) ADA accessible high-top seating;

**f.** Brunswick Zone provides seating behind the bowling area for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited the following failures of Defendants:

        **i.** The top surface of the seating exceeds the maximum allowed height of 34 inches above the finished floor;

    **ii.** The seating fails to provide the required knee clearance for an individual with a disability to be afforded the opportunity to sit behind the bowling area;

   **iii.** The seating fails to provide the required toe clearance for an individual with a disability to be afforded the opportunity to sit behind the bowling area;

   **iv.** Brunswick Zone fails to maintain the accessible features of the seating behind the bowling area;

    **v.** The Brunswick Zone fails to provide at least five percent (5%) ADA accessible seating behind the bowling area;

**g.** Brunswick Zone provides elevated seating in the pool table area for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited the following failures of Defendants:

      **i.**   The top surface of the elevated seating exceeds the maximum allowed height of 34 inches above the finished floor;

     **ii.**   The elevated seating fails to provide the required knee clearance for an individual with a disability to be afforded the opportunity to sit at the elevated seating in the pool table area;

    **iii.**   The seating fails to provide the required toe clearance for an individual with a disability to be afforded the opportunity to sit at the elevated seating in the pool table area;

     **iv.**   Brunswick Zone fails to maintain the accessible features of the elevated seating in the pool table area;

     **v.**   The Brunswick Zone pool table area fails to provide at least five percent (5%) ADA accessible elevated seating;

**h.** Brunswick Zone provides an accessible route for able-bodied individuals, but fails to afford non-able-bodied individuals the

same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited the following failures of Defendants:

      **i.** The facility fails to provide an accessible route from the entrance to the elevated seating area in the pool table area;

      **ii.** Brunswick Zone fails to maintain the accessible features of the accessible route;

**i.** Brunswick Zone provides seating in the party room for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited the following failures of Defendants:

      **i.** The top surface of the seating exceeds the maximum allowed height of 34 inches above the finished floor;

    **ii.**   The seating fails to provide the required knee clearance for an individual with a disability to be afforded the opportunity to sit in the party room;

    **iii.**  The seating fails to provide the required toe clearance for an individual with a disability to be afforded the opportunity to sit in the party room;

    **iv.**  Brunswick Zone fails to maintain the accessible features of the seating in the party room;

    **v.**   The Brunswick Zone party room fails to provide at least five percent (5%) ADA accessible seating;

**j.** Brunswick Zone provides a sales/service counter in the game room for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, which includes but is not limited the following failures of Defendants:

    **A.**  The existing counter fails to provide a minimum of 36 inches of clear counter surface for individuals with

disabilities to be able to make a parallel approach to the counter;

     **i.**    There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

     **ii.**    There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

**B.**  The existing counter fails to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

     **i.**    There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

  **ii.** There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

  **iii.** There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

**C.** There is no ADA accessible portion of the counter that extends the same depth as the non-accessible portion of the counter;

**D.** There is no ADA accessible check writing surface provided 28 inches minimum and 34 inches maximum above the finished floor that allows for the required knee and toe clearance;

E.   Brunswick Zone fails to maintain the accessible features at the sales/service counter that are required to be readily accessible to and usable by individuals with disabilities;

k. Brunswick Zone provides arcade games in the game room for able bodied individuals but fails to provide that same level of service to non-able bodied individuals;

l. Brunswick Zone provides lounge seating in the game room for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, including which includes but is not limited the following failures of Defendants:

i.   There is not at least five percent (5%) ADA accessible seating;

ii.  There is no ADA accessible lounge seating that conforms to the standards for accessible design in all of

the elements that are required to be readily accessible to and usable by individuals with disabilities;

    iii.    There is not 36 inches of clear floor or ground space around the lounge seating for a wheelchair user to be able to approach and transfer onto the seating;

    iv.    The current practice at Brunswick Zone is to position and arrange the lounge seating in a way that prohibits disabled individuals from being afforded the opportunity to use the lounge seating;

    v.    Brunswick Zone fails to maintain the accessible features of the lounge seating that are required to be readily accessible to and usable by individuals with disabilities;

m. Brunswick Zone provides a sales/service counter in the pro shop for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without

disabilities, which includes but is not limited the following failures of Defendants:

A.   The existing counter fails to provide a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

    i.   There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

    ii.   There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

B.   The existing counter fails to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

    i.   There is not 30 inches of clear counter surface that is measured a maximum of 36 inches

above the finished floor positioned for a forward approach;

ii. There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

iii. There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

C. There is no ADA accessible portion of the counter that extends the same depth as the non-accessible portion of the counter;

D. There is no ADA accessible check writing surface provided 28 inches minimum and 34 inches maximum

above the finished floor that allows for the required knee and toe clearance;

E.   Brunswick Zone fails to maintain the accessible features at the sales/service counter that are required to be readily accessible to and usable by individuals with disabilities;

n. Brunswick Zone provides bowling lanes for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, which includes but is not limited the following failures of Defendants:

i.   Brunswick Zone fails to provide at least 5% (but no fewer than one), of each type of bowling lane that complies with the ADA standards for accessible design;

ii.  Brunswick Zone fails to provide an ADA accessible route to the bowling lanes that are served by stairs.

iii. Brunswick Zone fails to have ADA accessible seating that is an integral part of the seating plan;

      iv. Brunswick Zone fails to provide ADA accessible seating that complies with section 802.1 at the accessible bowling lane;

      v. Brunswick Zone fails to maintain the accessible features at the bowling lanes that are required to be readily accessible to and usable by individuals with disabilities;

o. Brunswick Zone provides a lavatory in the restroom to the right of the entrance of the facility for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, which includes but is not limited the following failures of Defendants:

      i. The pipes underneath the lavatory sink fail to be properly insulated;

      ii. There is not at least one ADA accessible lavatory that measures a maximum of 34 inches above the finished floor to the top surface of the counter;

iii. The bottom reflecting surface of the mirror exceeds 40 inches above the finished floor;

iv. The highest operable part on the soap dispenser at the lavatory sink exceeds the maximum allowed obstructed reach range of 44 inches above the finished floor;

v. The highest operable part on the paper towel dispenser at the lavatory sink exceeds the maximum allowed unobstructed reach range of 48 inches above the finished floor;

vi. The flush control on the urinal exceeds the maximum allowed height of 44 inches above the finished floor;

vii. When exiting the restroom, the trash can obstructs the required perpendicular clear floor space;

viii. The current practice at Brunswick Zone is to locate the trash can in a way that prohibits disabled individuals from being afforded the opportunity to approach the restroom door to exit;

ix.    Brunswick Zone fails to maintain the accessible features at the lavatory that are required to be readily accessible to and usable by individuals with disabilities;

p. Brunswick Zone provides a toilet compartment within the lavatory in the restroom to the right of the entrance of the facility for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, which includes but is not limited the following failures of Defendants:

i.    The toilet compartment door fails to be self-closing;

ii.    There are not door pulls located on both sides of the toilet compartment door;

iii.    The centerline of the water closet fails to measure the required distance of 16-18 inches from the side wall;

iv.    The water closet seat exceeds the maximum allowed height of 19 inches above the finished floor;

v.     The side wall grab bar fails to extend the required distance of 54 inches from the rear wall;

vi.    The side wall grab bar exceeds the maximum allowed height of 36 inches above the finished floor;

vii.   The rear wall grab bar is not properly located 12 inches on the closed side of the water closet and 24 inches on the transfer side;

viii.  The rear wall grab bar exceeds the maximum allowed height of 36 inches above the finished floor;

ix.    The toilet paper dispenser fails to be properly located 7 inches minimum and 9 inches maximum from the front of the water closet;

x.     The highest operable part on the coat hook exceeds the maximum allowed unobstructed reach range of 48 inches above the finished floor;

xi.    Brunswick Zone fails to maintain the accessible features at the toilet compartment that are required to be readily accessible to and usable by individuals with disabilities;

q. Brunswick Zone provides a lavatory in the restroom to the far left of the entrance of the facility for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, which includes but is not limited the following failures of Defendants:

    i. The pipes underneath the lavatory sink fail to be properly insulated;

    ii. There is not at least one ADA accessible lavatory that measures a maximum of 34 inches above the finished floor to the top surface of the counter;

    iii. The bottom reflecting surface of the mirror exceeds 40 inches above the finished floor;

    iv. The highest operable part on the soap dispenser at the lavatory sink exceeds the maximum allowed obstructed reach range of 44 inches above the finished floor;

    v. The highest operable part on the paper towel dispenser at the lavatory sink exceeds the maximum allowed

unobstructed reach range of 48 inches above the finished floor;

vi.   The flush control on the urinal exceeds the maximum allowed height of 44 inches above the finished floor;

vii.   The highest operable part on the baby changing table at the lavatory sink exceeds the maximum allowed unobstructed reach range of 48 inches above the finished floor;

viii.   The floor mat is not stable, firm, or otherwise secured to the floor;

ix.   When exiting the restroom, the trash can obstructs the required perpendicular clear floor space;

x.   The current practice at Brunswick Zone is to locate the trash can in a way that prohibits disabled individuals from being afforded the opportunity to approach the restroom door to exit;

xi.   Brunswick Zone fails to maintain the accessible features at the lavatory that are required to be readily accessible to and usable by individuals with disabilities;

r. Brunswick Zone provides a toilet compartment within the lavatory in the restroom to the far left of the entrance of the facility for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, including which includes but is not limited the following failures of Defendants:

i.   The toilet compartment door fails to be self-closing;

ii.  There are not door pulls located on both sides of the toilet compartment door;

iii. The centerline of the water closet fails to measure the required distance of 16-18 inches from the side wall;

iv.  The water closet seat exceeds the maximum allowed height of 19 inches above the finished floor;

v.   The side wall grab bar fails to extend the required distance of 54 inches from the rear wall;

vi.  The side wall grab bar exceeds the maximum allowed height of 36 inches above the finished floor;

    **vii.** The rear wall grab bar is not properly located 12 inches on the closed side of the water closet and 24 inches on the transfer side;

    **viii.** The rear wall grab bar exceeds the maximum allowed height of 36 inches above the finished floor;

    **ix.** The toilet paper dispenser fails to be properly located 7 inches minimum and 9 inches maximum from the front of the water closet;

    **x.** The highest operable part on the coat hook exceeds the maximum allowed unobstructed reach range of 48 inches above the finished floor;

    **xi.** Brunswick Zone fails to maintain the accessible features at the toilet compartment that are required to be readily accessible to and usable by individuals with disabilities;

**20.** To date, the barriers to access and other violations of the ADA still exist and have not been remedied or altered in such a way as to effectuate compliance with the provisions of the ADA.

**21.** Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. He is entitled to have his

reasonable attorney's fees, costs and expenses paid by the Defendant pursuant to 42 U.S.C. §12205.

22. Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff's injunctive relief, including an Order to alter the discriminating facility to make it readily accessible to, and usable by, individuals with disabilities to the extent required by the ADA, and closing the facility until the requisite modifications are completed, and to further order the Defendant to modify its policies, practices, and procedures, to provide equal use of its facilities, services and benefits to disabled individuals.

## COUNT TWO
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE III
### 42 U.S.C. § 12182(b)(2)(A)(ii)
*(Practices, procedures, and policies denying equal benefits)*

## ADA Title III Prohibits Other Discrimination in Addition to Architectural Barriers

23.  Plaintiff re-alleges paragraphs 1-22 above.

24.  The ADA, Title III, provides a private right of action for "any person who is being subjected to discrimination on the basis of disability in violation of" Title III. 42 U.S.C. § 12182(a)(1) (emphasis added).

25.  The ADA, Title III, specifically makes it unlawful to provide individuals with disabilities with an "unequal benefit," and to relegate individuals with disabilities to a "different or separate" benefit. 42 U.S.C. §§ 12182(b)(1)(A)(ii)-(iii); 28 C.F.R. § 36.202(b)-(c). In other words, the disabled must receive equal benefits as the nondisabled. Further, 28 C.F.R. § 302(b) requires that goods, services, and accommodations be provided to individuals with disabilities in "the most integrated setting appropriate." 42 U.S.C. § 12182(b)(1)(B); 28 C.F.R. § 36.203(a). Similarly, the Preamble in addition to recognizing that persons who use wheelchairs and

mobility aids have been forced to sit apart from family and friends, also recognizes that persons who use wheelchairs and mobility aids historically have been provided "segregated accommodations" compared to non-disabled individuals, thus relegating persons who use wheelchairs "to the status of second-class citizens." See 28 C.F.R. pt. 36, App. B, at 631-633, 651 (2000) (discussion of §§ 36.308, 36.203).

26. Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. § 12101(a)(5).

27. To address this broad range of discrimination in the context of public accommodations, Congress enacted ADA, Title III, which provides in part: "No individual shall be discriminated against on the basis of

disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. 12182.

28. By its clear text, ADA, Title III requires a public accommodation to provide individuals with disabilities *more than simple physical access.* Removal of architectural barriers as required by Count One of this Complaint is but one component of compliance with ADA, Title III. Congress recognized that "individuals with disabilities continually encounter various forms of discrimination" including not only barriers to physical access, but also other forms of exclusion and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities. 42 U.S.C. 12101(a)(5); see also H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public

accommodation.").

29. For that reason, the Act applies not only to barriers to physical access to places of public accommodation, but also to any policy, practice, or procedure that operates to deprive or diminish disabled individuals' full and equal enjoyment of the privileges and services offered by the public accommodation to the public. 42 U.S.C. § 12182. Thus, a public accommodation may not have a policy, practice or procedure that excludes individuals with disabilities from services. 42 U.S.C. § 12182(b)(2)(A)(ii). The Eleventh Circuit held in <u>Rendon v. Valleycrest Prod., Ltd.</u> 294 F.3d 1279, (11th Cir. 2002) that:

> "A reading of the plain and unambiguous statutory language at issue reveals that the definition of discrimination provided in Title III covers both <u>tangible barriers</u> (emphasis added), that is, physical and architectural barriers that would prevent a disabled person from entering an accommodation's facilities and accessing its goods, services and privileges, see 42 U.S.C. § 12182(b)(2)(A)(iv), and <u>intangible barriers</u> (emphasis added), such as eligibility requirements and screening rules or discriminatory policies and procedures that restrict a disabled person's ability to enjoy the defendant entity's goods, services and privileges."

## Defendant's Failed Practices and Lack of Policies Are Discriminatory

**30.** Pursuant to 42 U.S.C. § 12182(b)(2)(A)(ii) discrimination includes:

> "*a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations.*"

**31.** Accordingly, a place of public accommodation must modify a policy or practice that has the consequence of, or tends to deny, access to goods or services to the disabled.

**32.** As detailed below, Defendant has failed to make reasonable modifications in its policies, practices, and procedures that are necessary to afford its goods, services, facilities, privileges, advantages, or accommodations to individuals with restricted mobility. By failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, Defendant denied services, segregated or otherwise treated Plaintiff differently than other individuals who are not disabled. Pursuant to 42 U.S.C. § 12182(b)(2)(A), Defendant has discriminated against Plaintiff.

Defendant will continue that discrimination forever until enjoined as Plaintiff requests. The discrimination is described more particularly in the following paragraphs.

33. Defendant either has no policies, practices, and procedures to remove architectural barriers or else does not abide by them. The rampant architectural barriers previously identified in Count One establish that Defendant has failed to create, adopt, and/or implement ADA Title III compliance policies, procedures, and practices as to architectural barriers.

34. Defendant's use of its establishment, and its practices at the establishment located at 1661 Eastern Blvd, Montgomery, AL 36117, literally create barriers and in so doing deny Plaintiff the full and equal enjoyment of the goods and services at Brunswick Zone. Those practices include:

   a) Defendant fails to provide an accessible route to and throughout its establishment, which means Mr. Thornton cannot travel and move throughout the establishment the way non-disabled people can. Accordingly, he cannot as fully and equally use the establishment as the non-disabled can;

b) Defendant fails to provide an accessible route to and throughout the elevated seating in the pool table area, which means Mr. Thornton cannot travel and move throughout the elevated seating in the pool table area the way non-disabled people can. Accordingly, he cannot independently use the pool table like non-disabled;

c) Defendant fails to provide an accessible route to and throughout the bowling lanes area in its establishment by locating chairs, tables and/or other furniture within the required clear floor space on the accessible route, which means Mr. Thornton cannot access, travel and move throughout the bowling lanes area the way non-disabled people can. Accordingly, he cannot as fully and equally use the establishment as the non-disabled can;

d) Defendant fails to provide accessible bowling lanes in its establishment to Plaintiff and other disabled individuals, so that Mr. Thornton cannot enjoy bowling independently the way non-disabled people can;

e) Defendant fails to provide accessible restrooms throughout its establishment to Plaintiff and other disabled individuals, so that Mr. Thornton cannot use the restrooms or move into and throughout the restrooms, which the able-bodied can freely do;

f) Defendant makes sales/service counters throughout its establishment inaccessible for use by the handicapped by failing to provide either a parallel or a forward approach to the counters, which means Mr. Thornton cannot fully and equally use the counters to receive any services provided in the way the non-disabled do, because the non-disabled have counters they can use to receive services provided at the establishment;

g) Defendant makes check-out counters throughout its establishment inaccessible for use by the handicapped by failing to provide either a parallel or a forward approach to the counters, which means Mr. Thornton cannot fully and equally use the counters to check out in the way the non-disabled do, because the non-disabled have counters they can use to checkout;

**h)** Defendant fails to provide an accessible bar and accessible seating in its establishment for use by the handicapped by failing to provide the necessary height or clearance for a forward approach to the bar, which means Mr. Thornton cannot fully and equally use the bar to receive any services provided in the way the non-disabled do, because the non-disabled have a bar they can use to receive services provide at the establishment;

**i)** Defendant fails to provide accessible arcade games in its establishment for use by the handicapped by failing to provide the required clear floor or ground space to the disabled, which means Mr. Thornton cannot fully and equally use the arcade games provided in the way the non-disabled do, because the non-disabled have arcade games they can use freely;

**j)** Defendant fails to provide accessible seating throughout its establishment to Plaintiff and other disabled individuals, so that Mr. Thornton cannot use or transfer onto the seating provided, which the able-bodied can freely do;

      **k)** Defendant's practices are conducted without regard to disabled individuals;

      **l)** Defendants practice is to only make modifications to practices and policies and repairs to barriers upon the demand of the disabled.

35. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant has no policies, practices, or procedures, or else it has failed to implement them, to ensure that any removal of architectural barriers is permanent. 42 U.S.C. § 12182(b)(2)(a)(iv) and (v).

36. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant's existing practice is both in effect and/or explicitly to remediate ADA Title III architectural barriers only upon demand by the disabled.

37. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant has no policies, practices, and procedures or else it failed to create, implement and maintain policies and procedures to ensure individuals with disabilities are able to have the same experience at its establishment

as individuals without disabilities, 42 U.S.C. 12182(b)(1)(A), and in particular the opportunity to have full and equal access to all of the goods, services, privileges, advantages, or accommodations of Brunswick Zone, as described above in detail.

38. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant has failed to create, implement, and maintain a policy of complying with ADA building design standards and regulations.

39. To date, the Defendant's discriminating policies, practices, and/or procedures have not been reasonably modified to afford goods, services, facilities, privileges, advantages, or other accommodations to individuals with disabilities.

40. A reasonable modification in the policies, practices, and procedures described above will not fundamentally alter the nature of such goods, services, facilities, privileges, advantages, and accommodations. The Plaintiff hereby demands that Defendant both create and adopt a corporate practice and policy that Defendant (1) will fully comply with Title III, ADA, and all its implementing regulations so that architectural barriers identified above are

permanently removed from Defendant's establishment consistent with the ADA; (2) Defendant will provide the disabled, including those with mobility limitations full and equal use and enjoyment of Brunswick Zone; (3) Brunswick Zone will modify its practice of making ADA Title III architectural barrier remediations only upon demand by the disabled.

41. As pled above AMF Bowling Centers, Inc. "operates" and "leases" the Brunswick Zone establishment located at 1661 Eastern Blvd, Montgomery, AL 36117 and is therefore, pursuant to 42 U.S.C. § 12182, responsible for creating, implementing, and maintaining policies, practices and procedures, as alleged above.

42. The ADA is over twenty-five (25) years old. Defendant knows it must comply with the ADA Title III. The ADA Title III requires modifications in policies, practices, and procedures to comply with it, as pled above in the statute. 42 U.S.C. §12182(b)(2)(A)(ii).

43. By this Complaint, Plaintiff provides sufficient notice of his demands for an alteration in Defendant's policies, practices, and procedures.

44. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. He is entitled to have his

reasonable attorney's fees, costs and expenses paid by the Defendant pursuant to 42 U.S.C. § 12205.

**45.** Pursuant to 42 U.S.C. § 12188 this Court is authorized to enjoin these illegal policies, practices, and procedures.

**COUNT THREE**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**
*Denial of Full and Equal Enjoyment*

**46.** Plaintiff re-alleges paragraphs 1-45 above.

**47.** 42 U.S.C. § 12182(a) provides:

> *"No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."*

**48.** Congress enacted the ADA upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms for discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. § 12101(a)(2).

**49.** Congress also found that: *"individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and*

*communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities,* 42 U.S.C. § 12101(a)(5); *"the nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals;"* 42 U.S.C. § 12101(a)(7). Congress even found that: *"the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity."* 42 U.S.C. § 12101(a)(8).

50. In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressed discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1)-(2).

51. The ADA provides, inter alia, that it is discriminatory to subject an individual or class of individuals on the basis of a disability "to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity." 42 U.S.C. § 12182(a)(i).

52. The ADA further provides that it is discriminatory "to afford an individual or class of individuals, on the basis of a disability ... with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals." 42 U.S.C. § 12182(a)(ii).

53. Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. 12101(a)(5). Defendant's acts and

omissions alleged herein are in violation of the ADA, 42 U.S.C. §§ 12101, et seq., and the regulations promulgated thereunder.

54. To address this *broad* range of discrimination in the context of public accommodations, Congress enacted Title III, which by its clear text, requires a public accommodation to provide individuals with disabilities more than simple physical access. Congress recognized that "individuals with disabilities continually encounter *various forms of discrimination*" including not only barriers to physical access, but also other forms of exclusion and *relegation to lesser services, programs, activities, benefits, jobs, or other opportunities.* 42 U.S.C. 12101(a)(5); see also H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation.").

55. For that reason, the Act applies not only to barriers to physical access to business locations, but also to any policy, practice, or procedure

that operates to deprive or diminish disabled individuals' *full and equal enjoyment* of the privileges and *services* offered by the public accommodation to the public. 42 U.S.C. 12182. Thus, a public accommodation may not have a policy, practice or procedure that excludes individuals with disabilities from services. 42 U.S.C. § 12182(b)(1)(A)(i).

56. The keystone for this analysis is Defendant *must start by considering how its facilities are used by non-disabled guests and then take reasonable steps to provide disabled guests with a like experience. Spector v. Norwegian Cruise Line Ltd.,* 545 U.S. 119, 128–29, 125 S.Ct. 2169, 162 L . E d . 2d 97 (2005) See also, *Baughman v. Walt Disney World Company,* 685 F.3D 1131, 1135 (9th Cir. 2012).

57. Plaintiff Christopher Thornton, was denied full and equal access to Brunswick Zone. Plaintiff specifically and definitely wants to return to the Defendant's establishment to enjoy Brunswick Zone's 38 all-star lanes, billiards, interactive arcade and leisure entertainment activities. More specifically, Plaintiff wants to be afforded the same level of service that is offered to non-disabled individuals and which Defendant has failed to provide to Plaintiff as follows: Defendant

failed to provide an accessible route to and throughout the bowling lanes area for disabled individuals which means that unlike the non-disabled, the disabled must struggle just to get throughout the bowling lanes area, if they can make it at all; Defendant failed to provide the same experience by making it nearly impossible for the disabled to use the arcade games provided in the establishment's game room, while the non-disabled can independently use the arcade games freely; Defendant failed to provide the same experience by making it nearly impossible for the disabled to use the bowling lanes provided in the establishment, while the non-disabled can independently use the bowling lanes and bowl freely; Defendant failed to provide accessible seating to and throughout the establishment for disabled individuals, which means that unlike the non-disabled, the disabled is denied the ability to choose where they would like to sit; Defendant failed to provide an accessible route to the elevated seating in the pool table area for disabled individuals which means that unlike the non-disabled, the disabled must struggle just to get onto the elevated seating independently, if they can make it at all; Defendant failed to provide Plaintiff that same experience

that non-disabled individuals have when bowling at Brunswick Zone;

Defendant failed to provide the same experience by making it nearly

impossible for the disabled to access the sales/service counters

throughout the establishment, while the non-disabled can

independently access the counters and the services provided at the

counters; Defendant failed to provide the same experience by making

it nearly impossible for the disabled to access the checkout counters

throughout the establishment, while the non-disabled can

independently access the counters and the services provided at the

counters; Defendant failed to provide the same experience by making

it nearly impossible for the disabled to be able to independently access

items maintained on the sales/service counters, while the non-

disabled can independently access the goods and services at the

sales/service counters; Defendant failed to maintain the accessible

signage of Brunswick Zone so that the disabled unlike the non-

disabled, do not even know what route and what facilities are usable

by individuals with disabilities; Defendants failure to identify by

signage what is accessible and what is not accessible makes the

disabled inferior, segregated or otherwise treated differently, because

unlike the non-disabled, disabled individuals have to guess and speculate and determine by trial and error what facilities can even be used by them; Defendant failed to provide the same experience by making it nearly impossible for the disabled to access and use the restrooms throughout the establishment, while the non-disabled can independently access and use the restrooms provided by the facility; and all the foregoing failures by Defendant inhibited Plaintiff from having the same experience that non-disabled individuals have when at Brunswick Zone.

58. In its Preamble to the title III regulation, the Department of Justice recognized that mobility impaired persons including persons in wheelchairs should have the same opportunities to enjoy the goods and services and other similar events of public accommodation with their families and friends, just as other non-disabled individuals do. The DOJ further recognized that providing segregated accommodations and services relegates persons with disabilities to the status of *second-class citizens*. 28 C.F.R. pt. 36, App. B, § 36.203.

59. The ADA specifically makes it unlawful to provide individuals with disabilities with an "unequal benefit," and to relegate individuals

with disabilities to a "different or separate" benefit. 42 U.S.C. §§ 12182(b)(1)(A)(ii)-(iii); 28 C.F.R. § 36.202(b)-(c). Further, 28 C.F.R. § 302(b) requires that goods, services, and accommodations be provided to individuals with disabilities in "the most integrated setting appropriate." 42 U.S.C. § 12182(b)(1)(B); 28 C.F.R. § 36.203(a). Similarly, the Preamble in addition to recognizing that persons who use wheelchairs have been forced to sit apart from family and friends, also recognizes that persons who use wheelchairs historically have been provided "inferior seating" and "segregated accommodations" compared to non-disabled individuals, thus relegating persons who use wheelchairs "to the status of second-class citizens." See 28 C.F.R. pt. 36, App. B, at 631-633, 651 (2000) (discussion of §§ 36.308, 36.203).

60. Thus, Defendant's "use" of the accessible features constitutes statutory discrimination in violation of the ADA, because Defendant has segregated and separated the disabled from the non-disabled individuals. "*The goal is to eradicate the invisibility of the handicapped. Separate-but-equal services do not accomplish this central goal and should be rejected.*" *H.R. Rep. No. 101-485(III), at 50, 1990 U.S.C.C.A.N at 473*. The

ADA provides a "broad mandate" to "eliminate discrimination against disabled individuals, and to integrate those individuals into the economic and social mainstream American life. *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675, 121 S.Ct.1879, 149 L.Ed.2d 904 (2001) (*quoting H.R.Rep. No. 101-485, pt. 2, p.50 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 332*).

61. Defendant discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the facility during each visit. Each incident of deterrence denied Plaintiff an equal "opportunity to participate in or benefit from the goods, services, facility, privilege, advantage, or accommodations" of Brunswick Zone.

62. Defendant's conduct and Defendant's unequal treatment to Plaintiff constitutes continuous violations of the ADA and absent a Court ordered injunction from doing so, Defendant will continue to treat Plaintiff and others similarly situated unequally.

63. Defendant's failure to maintain the accessible features that are required to be readily accessible to and usable by individuals with disabilities constitute continuous discrimination and absent a Court

ordered injunction, Defendant will continue to not maintain the required accessible features at Defendant's facility. 28 C.F.R.§ 36.211(a).

64. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. He is entitled to have his reasonable attorney's fees, costs and expenses paid by the Defendant pursuant to 42 U.S.C. § 12205.

65. Pursuant to 42 U.S.C. § 12188, this Court is authorized to enjoin these illegal acts of Defendant.

**WHEREFORE**, premises considered, Christopher Thornton demands judgment against the Defendant on Counts One through Three and requests the following injunctive and declaratory relief:

1. That the Court declare that the property owned and business operated by the Defendant as well as all Defendant's illegal actions described herein violate the Americans with Disabilities Act, as more particularly described above;

2. That the Court enter an order enjoining the Defendant to alter the facility to make it accessible to and usable by individuals with

disabilities to the full extent required by Title III of the ADA, to comply with 42 U.S.C. § 12182(b)(2)(A)(iv) and (v) and their implementing regulations, as stated in Count One;

3. That the Court enter an order, in accordance with Count Two, directing the Defendant to modify its policies, practices, and procedures both to remedy the numerous ADA violations outlined above, in violation of 42 U.S.C. § 12182(b)(2)(A)(ii), and to permanently enjoin Defendant to make its business practices consistent with ADA Title III in the future;

4. That the Court enter an order directing the Defendant to provide Plaintiff full and equal access both to the Brunswick Zone experience and to the use of the Brunswick Zone facility, and further order Defendant to maintain the required accessible features at the establishment so that Plaintiff and others similarly situated are offered the experience that is offered to non-disabled individuals, as stated in Count Three;

5. That the Court enter an Order directing the Defendant to evaluate and neutralize its policies, practices, and procedures towards persons with disabilities for such reasonable time so as to allow them to

undertake and complete corrective procedures;

6.    That the Court enjoin Defendants to remediate the Brunswick Zone establishment to the proper level of accessibility required for the design and construction of the facility for first occupancy, as stated in Count Three;

7.    That the Court award reasonable attorney's fees, costs, (including expert fees) and other expenses of suit, to Plaintiff; and

8.    That the Court award such other, further, and different relief as it deems necessary, just, and proper.

Respectfully Submitted, this the 21st Day of March, 2017.

/s/ Cassie E. Taylor
**CASSIE E. TAYLOR**
**BPR # AL-8297N67R**
The ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36116
334.356.5314 p
334.819.4032 f
CET@ADA-Firm.com
*Attorney for the Plaintiff*

/s/

**L. LANDIS SEXTON**
**BPR # AL-5057N71L**
The ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36116
334.819.4030 p
334.819.4032 f
LLS@ADA-Firm.com
*Attorney for the Plaintiff*

/s/

**Tracy G. BirdSong**
**BPR # AL-2170D64T**
The ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36116
334.819.4030 p
334.819.4032 f
TGB@ADA-Firm.com
*Attorney for the Plaintiff*

## CERTIFICATE OF SERVICE

This is to certify that I have this day filed with the Clerk of Court the aforementioned Complaint for service of process by USPS mail or electronic mail, postage prepaid and properly addressed this _21_ day of _March_, 2017 to the following:


**AMF BOWLING CENTERS, INC.**
**c/o CT Corporation System**
**attn: Registered Agent**
**2 North Jackson St., Suite 605**
**Montgomery, AL 36104**


/s/ _Cassie E. Taylor_
  **CASSIE E. TAYLOR**
  **BPR # AL-8297N67R**
  The ADA Group LLC
  4001 Carmichael Road, Suite 570
  Montgomery, Alabama 36116
  334.356.5314 p
  334.819.4032 f
  CET@ADA-Firm.com
  *Attorney for the Plaintiff*